

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00138-CR

———————————————————

CRYSTAL MASON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1485710D

---

Before Kerr, Birdwell, and Bassel, JJ.
Opinion on Remand by Justice Birdwell

**OPINION ON REMAND**

This case is on remand from the Texas Court of Criminal Appeals. After considering the dispositive issue remanded to us—whether the evidence was sufficient to support Crystal Mason's conviction for illegal voting under the Texas Election Code—we reverse the trial court's judgment and render judgment acquitting her.

**Procedural Background**

This appeal arises from Mason's conviction for illegal voting by casting a provisional ballot in the 2016 election while on a three-year period of supervised release for the federal offense of conspiracy to defraud the United States—for which she had already served a sixty-month sentence of confinement. *Mason v. State*, 598 S.W.3d 755, 762–63, 765–66 (Tex. App.—Fort Worth 2020) (*Mason I*), *aff'd in part and rev'd in part*, 663 S.W.3d 621 (Tex. Crim. App. 2022) (*Mason II*). In the first appeal, we affirmed Mason's conviction. *Mason I*, 598 S.W.3d at 789. The Texas Court of Criminal Appeals reversed our judgment after determining that we had misconstrued the statute under which Mason was convicted. *Mason II*, 663 S.W.3d at 624. That court held that to prove Mason had illegally voted under Election Code Section 64.012(a)(1), the State had to prove (1) that Mason knew she was on supervised release after having been convicted of a felony and (2) that she also "actually realized" that "'these circumstances . . . in fact' rendered her ineligible to vote." *Id.* at 632 (quoting *Delay v. State*, 465 S.W.3d 232, 252 (Tex. Crim. App. 2014)). The court

2

remanded the case for us "to evaluate the sufficiency of the evidence under the correct interpretation of the statute." *Id.* at 624, 635.

Because the majority of the pertinent facts are set forth in *Mason I* and *Mason II*, we need not repeat them here. Instead, we reserve a more in-depth discussion for our analysis.

**Issues on Remand**

The parties filed new briefing on remand. In Mason's brief on remand, she contends that the evidence is insufficient to prove that she actually realized that she was ineligible to vote when she cast her provisional ballot. She also re-urges the complaint that her trial counsel was ineffective. Because we determine that her first issue has merit, we need not decide her second issue. *See* Tex. R. App. P. 47.1.

**Standard of Review and Applicable Law**

We must decide this case according to the settled sufficiency standard of review required by federal due process: we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). In doing so, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021). We use this comparison even when, as here, the trial court was the factfinder. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

3

1997). A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914.

> Here, the indictment alleged that in the 2016 general election, Mason
>
> vote[d] in an election in which she knew she was not eligible to vote . . . after being finally convicted of the felony of Conspiracy to Defraud the United States . . . [and having] not been fully discharged from her sentence for the felony including any court ordered term of parole, supervision[,] and probation[.]

The version of the statute under which Mason was charged and convicted provided that "[a] person commits an offense if the person . . . votes or attempts to vote in an election in which the person knows the person is not eligible to vote." Act of May 26, 1997, 75th Leg., R.S., ch. 864, § 63, 1997 Tex. Gen. Laws 2742, 2750 (amended 2021) (current version at Tex. Elec. Code Ann. § 64.012(a) ("A person commits an offense if the person knowingly or intentionally . . . votes or attempts to vote in an election in which the person knows the person is not eligible to vote.")). Under this statute, the State must prove not only that a person voted in an election while ineligible to do so but also that the person knew her circumstances made her ineligible to vote in that election. *Mason II*, 663 S.W.3d at 628–29.

Whether the evidence was sufficient here to prove that Mason knew she was ineligible to vote in the 2016 general election and did so anyway is the crux of her complaint on remand.

4

# Review of Record

As the Court of Criminal Appeals pointed out in *Mason II*, Mason's defensive theories were that (1) she did not read the admonishments in the provisional-ballot affidavit that she signed, so she could not have been informed in that manner that her circumstances rendered her ineligible to vote; (2) the government never told her that as a convicted felon she was ineligible to vote; and (3) had she known she was ineligible to vote, she would never have risked committing a crime and jeopardizing her federal supervised release. *Id.* at 625. We will first examine in detail the evidence regarding whether she read the provisional-ballot's affidavit warning and if she did, whether that warning was sufficient to inform her that she was ineligible to cast a provisional vote.

### Election judge's testimony and Mason's responsive testimony

Karl Dietrich, the election judge for the polling place where Mason voted in 2016, testified that when the poll worker could not find Mason's name on the list of registered voters, Dietrich was called to assist. Dietrich greeted Mason, looked at her driver's license, and then confirmed that her name was not on the list—after searching under two possible last names and by her age:

> And I remember asking her if she knew -- if there was any reason that she knew that she wouldn't have been in the book of registered voters.
>
> She stated that she didn't and that someone else from her household and address had voted earlier in the day and something to the effect of, you know, obviously she should get to vote, too.

After that, *I tried to look her up in the online voter database*,[1] which is an electronic database, and it's potentially more up to date, and again, looked under several different names and [wasn't] able to identify her as a registered voter.

[Emphasis added.]

After being unable to find Mason's name in the online database, Dietrich asked her if she wanted to vote provisionally:

And in this case, because she wasn't in the registered book, I couldn't vote her normally. She lived at an address . . . she had identified already [as] inside the precinct, so I knew she was in the correct polling location. I think I even asked her -- because we always ask, Hey, have you moved from this address. I confirmed that that was still the correct address. And so I said, Well, I can't vote you normally, but would you -- do you want to vote provisionally.

Q. All right. And what was her response to that?

A. Her response was in the affirmative.

Once Mason indicated she wanted to vote provisionally, Dietrich did not attempt to verify her registration via any other method:

Q. Once Ms. Mason indicated that she wanted to vote provisionally, what did you do?

A. . . . And so to -- so to answer your question, what did I do, I then processed through it. I walked through the provisional voting. As I said, we didn't do it too often. We have an election manual. It has a section on provisional voting just like it has a section on setting up the machines or on other special cases and like if they walked in with their mail-in ballot and that sort of thing.

---

[1]Nothing in the record indicates whether the online database would have showed why Mason's name was not on the list of registered voters in the county, i.e., her status as a convicted felon on supervised release.

So I went to the provisional voter section, and -- and I walked through it and read the instructions and went through them step by step.

Dietrich encountered another person that day whose name he could not locate as a registered voter, but he took additional steps to confirm the reason that voter was ineligible:

Q. Was she [Mason] also -- or did she have the option to just leave and not vote? Is that an option?

A. Yes, she did. And some people did. For instance, I had one voter come in, and -- and *he had registered. I found him in the database. I wound up calling and everything*, and it turned out that in his case, he had registered and had the right ID and everything, but he had registered within a 30-day window. And you had to [have] registered at least 30 days prior to the election.

*And when the Tarrant County elections people identified this to me*[2] and I relayed that fact to him, he -- you know, I said, Now, that might not be

---

[2]Had Dietrich called the Tarrant County Elections Administration (TCEA), as he did with the voter who had registered too late, it is possible that he would have been told that Mason was not on the list of registered voters because of her felony conviction. *Cf.* Tex. Elec. Code Ann. § 63.0051(a)–(b) ("If the name of a voter who is offering to vote is not on the precinct list of registered voters, an election officer may contact the voter registrar regarding the voter's registration status[; and i]f the election officer determines the voter is a registered voter of the territory covered by the election but is offering to vote in the incorrect precinct, the election officer shall provide the correct precinct location information to the voter."). The TCEA records admitted at trial contain a screen-capture printout dated June 20, 2013, that notes her registration status as "C" for cancelled with the following reference to the Secretary of State's April 26, 2013 Felon List in the Comments section: "SOS Felon List 5/21/13 PF." Indeed, the very notice of felony convictions sent by the U.S. Attorney's Office to the Secretary of State to be included in the Felon List distributed to county elections administrations state-wide—which included not only Mason's federal felony conviction but the term of her incarceration (60 months) and the three years' supervised release—was admitted into evidence as part of the TCEA's file. And had

7

correct, and something might be different, and so I can provisionally vote you, but the reality is . . . you didn't register in time. And in that case he left.

[Emphasis added.]

Dietrich described how he helped Mason fill out her provisional ballot:

And so as I said before, Ms. Mason had her driver's license. It was a[n] in-date valid driver's license and had the address. So I checked that, yes, she had the acceptable ID.[3] I remember going down this list of the reasons for voting provisionally. Failed to present an acceptable ID is the first one. That's not the case.

    Voter not on the list of registered voters, that -- that was the case.

    . . . .

    . . . I remember that Ms. Mason and I sat down at a table, and -- and I sat down and actually read through each part. The -- I only do two or three of them. I want to make sure that they're right.

    . . . .

    Then I remember underneath this is this "to be completed by the voter" section. And it's in English and Spanish, and so it has about ten lines here. And I remember reading this and just looking it over and then passing it to Ms. [Mason] saying, please -- *this is the part to be completed by the voter, please read through this and fill out this section.*

    And so I'd been sitting at the table with her while I filled out this and looking over this. And, in fact, I think I even described the reason and so on.

---

Dietrich conveyed this readily available information to Mason, based upon her sworn testimony, she possibly would have refrained from voting.

[3]Dietrich knew who Mason was even without her license because she was his neighbor. So even though Dietrich checked Mason's license, he did not do so to verify her identity. He confirmed that Mason never tried to give him a false name or to pretend she was someone else.

> I had not yet signed it at that point, and I handed it over to her, and then she filled out this white section.

[Emphasis added.]

In *Mason I*, we described the provisional ballot form that Dietrich had Mason complete and sign[4]: "The affidavit form has two parts: a right side with blanks in which the provisional voter completes [certain] information[5] and a left side that includes [certain] affirmations . . ." about the voter's eligibility. 598 S.W.3d at 763. The left-side text—which contains those affirmations—is located under the title, "TO BE COMPLETED BY VOTER"; is printed in both English and Spanish; and contains seven bold arrows pointing to the right-hand side of the form. The affirmations read as follows:

> I am a registered voter in this political subdivision and in the precinct in which I'm attempting to vote and have not already voted in this election (either in person or by mail). I am a resident of this political subdivision, have not been finally convicted of a felony or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned. I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote. I understand that giving false information under oath is a misdemeanor, and I understand that it is a felony of the 2nd degree to vote in an election for which I know I am not eligible.

---

[4]Dietrich identified the form at trial, noting that it was his writing and signature "on the back." A copy of a blank version of the form Mason and Dietrich filled out is attached to this opinion as an exhibit.

[5]All of the writing on the right side of the card was Mason's.

*Id.* at 763 n.1. Significantly, although this language requires the provisional voter to affirm that he or she is not a felon—or if a felon that he or she has either (a) completed all of the imposed punishment or (b) been pardoned—it does not expressly inform the provisional voter that if any of these affirmations is untrue, the signatory is ineligible by law to cast the provisional ballot.

When Dietrich was asked whether he knew if Mason had actually read what he had asked her to read, Dietrich answered,

> A. I cannot say with certainty that she read it, but she certainly paused and took some number of seconds to look over what was on the left. And she certainly read the right part, and she filled it out since she put the right information in the boxes.
>
> Q. Now, once she fills it out and hands it back to you, what do you do with it? Is there any more additional process that you take with her?
>
> A. Yes. That's the point at which I -- well, the first -- the first thing that I did was I looked over the white section and ensured that it was filled out accurately, because we don't want her to have it disqualified on some technicality or something.
>
> And then I flipped over to the back, and there's language on the back that I affirm, or to that effect, that all the information I provided is accurate.
>
> And so I -- I remember holding up my right hand and said, Do you affirm that *all the information you provided* is accurate.
>
> And I received a response in the affirmative, and I signed and dated it at that point.
>
> Q. Okay. So she swore to the affidavit?

A. I -- I wouldn't -- I don't think I used the word swear or anything, but *she certainly affirmed that she had provided* accurate information.

[Emphasis added.]

When cross-examined about whether he thought Mason had read the left side of the card, Dietrich said, "I remember quite distinctly drawing my finger down that text as I talked to her and saying, Please read over this and then fill out this section here, running my finger over then the right side. I distinctly have an image of that memory." According to Dietrich, Mason "distinctly paused while reading or appearing to read the form prior to . . . filling out her name." Dietrich did not think it was possible that Mason simply did not review the affidavit language because he "saw her pause and look over."

Dietrich testified that if he had thought Mason had not read the card, he would have read it aloud to her before letting her sign it. According to Dietrich, reading the card is important because before allowing someone to vote provisionally, it is important to make sure the person is eligible to vote. Dietrich said that he did not know Mason was ineligible to vote or on supervised release, and he had no reason to suspect it.

According to Dietrich, he was the only person who assisted Mason with the provisional ballot.

In contrast to Dietrich's testimony, Mason testified that a woman had helped her with the provisional ballot and that she never even saw or talked to Dietrich on election day, a fact that she was sure of because he was her neighbor.

When the State questioned Mason about whether she read the left side of the card on that day, the following exchange occurred:

> Q. All right. Now, you've received these admonishments back in 2004,[6] and your testimony today in regard to State's Exhibit No. 8 and specifically State's Exhibit No. 9, the exact affidavit, *it's your testimony that you simply did not read this*?
>
> A. *I didn't, not at all.* I had someone helping me. I had a woman that was helping me, and all she explained to me was I'm doing it -- well, the -- the gentleman[7] told me that you can do a provisional form. And on the provisional form, if you're at the right location or if you're in the right area, then it's going to count. If not, it won't count. So that's all I -- that's all I understood that form to be, was if I'm here and I'm where I [am] supposed to vote, it's going to count. That's it.

[Emphasis added.]

Mason categorically denied Dietrich's account of what happened that day:

> Q. Do you recall Karl Dietrich? He testified. You were in here for his testimony, were you not?
>
> A. I was.
>
> Q. And he said that he told you, Please read this.
>
> A. Karl --

---

[6]In context, this reference appears to be to Mason's 2004 provisional ballot, which we discuss later in our record review.

[7]Mason appears to be referring to the poll worker who initially tried to find her name on the polling location's list of registered voters.

Q. You -- you heard that?

A. I did, yes, sir. Karl --

Q. Did he tell you that?

A. *He didn't tell me that. I didn't see him.* Karl is my neighbor.

. . . .

Q. So it's your -- and let me ask you a question.

It's your testimony today that you did not even see him?

A. I -- *I did not see my neighbor.* I would have -- all I know is she took the -- she took my ID, and they filled out whatever they needed. She went back with me, and we sat on the back table.

When we sat on the back table, only thing I did, she said, Make sure everything is -- I didn't -- a man didn't help me. A young guy helped me and -- a young guy helped me at the front when he looked -- when he looked me up. That's who helped me at the front.

. . . .

Q. . . . Are you saying that Karl Dietrich -- are you inferring he was not truthful in his testimony, yes or no?

*A. He was not truthful at all.*

[Emphasis added.]

Later, she testified similarly:

Q. Now, you also heard from Karl Dietrich that he said not only did he instruct you to read the affidavit but he also had you affirm . . . what's in there.

A. I heard that, sir, and that's incorrect. I didn't even -- *I didn't deal with him.* If he feel -- I remember -- *I gave him my ID and -- like I said, I gave*

13

*him my ID* [the record is unclear to whom Mason is referring]. *If he filled out what he filled out, he wasn't the one that was with me.*

I went and sat at the table with a lady. She helped me out. From there, she walked me over to the booth. From there, when I walked over from the booth, that was it.

*If I would have seen my neighbor, I would have spoke to my neighbor.* My neighbor know I went to prison. My neighbor know when I came back home. My neighbor know when I was fixing up my house. He's my neighbor. We share the same street. I mean, we are right -- we're not around the corner from each other. They are my neighbors, too, over there, they son. I didn't know; my kids knew, you know. We been there for nine years.

. . . So if I would have seen him, I would have had [a] conversation with him.

[Emphasis added.]

Thus, as to the circumstances of what Mason was told by Dietrich or what Dietrich said he saw her do while filling out the provisional ballot, the trial court could have chosen to believe either Dietrich or Mason, but it could not have chosen to believe both. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) ("As factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties."). If Mason never saw or interacted with Dietrich that day, then nothing he testified to about what he told her regarding the provisional ballot and what he saw her do as a result of his assistance—helping her, telling her to read the form's left-side language, and watching her pause as if she were reading it—could have been true.

14

**Poll worker's testimony**

The poll worker who initially helped Mason at the polling place and tried to look up her name in the registration list testified that he suggested that she fill out a provisional-ballot form, and he confirmed that Mason went with Dietrich to fill it out. The poll worker explained that Mason was sitting to his right, four to five feet away from him, as she filled out the form with Dietrich. He testified that he saw "[h]er finger watching each line making sure she read it all." As with her testimony regarding Dietrich, Mason testified that the poll worker's testimony "was not truthful at all."

**Mason's admission to a reporter**

The State cross-examined Mason about whether she had told a reporter that she had "skimmed" the left-side affidavit language before signing the provisional ballot:

> Q. Do you recall telling the reporter -- I believe it was an Anna Tinsley and a Deanna Boyd. You told them you did, in fact, skim the affidavit. You, quote, skimmed it.
>
> A. That's -- that's not true.
>
> Q. Okay. So they're lying, too?
>
> A. And -- and I didn't talk to a Tinsley. I talked to Deanna Boyd.
>
> Q. Deanna Boyd?
>
> A. Correct.
>
> Q. And Deanna -- you told Deanna Boyd that you did, in fact, skim this language?

15

A. No, sir, I didn't.

Q. Okay. Have you had a chance to look at the article?

A. No, I haven't.

After having her memory refreshed with the news article, Mason attempted to explain what she might have meant:

Q. And so you told Deanna Boyd that you -- again, this is yes or no -- that you had skimmed through the form, correct?

A. I don't recall saying that, but I'm sure I did. I had to scan through it, sir. I put my information on it. So we -- we would say yes.

Q. No -- skim through the affidavit language?

A. I didn't know.

Q. Yes or no?

A. No, I didn't, not at all.

The State continued to press Mason on this point:

Q. So at this point -- we've already been over this -- Karl Dietrich and [the poll worker], but you're also asserting that Deanna Boyd is untruthful, too? Yes or no?

A. What I'm saying is she's in the -- she's -- she -- she writes in the paper. You know, I'm saying -- I know what I've said and what I told her, and I also was -- I was -- I also was communicating with her through my Facebook, too.

So, yeah, I do remember -- I do remember the things that I told her, and I told her that I wouldn't dare vote if I -- if I wouldn't have dared -- if I would have seen that, I would have got up and walked away. I didn't even want to go vote. My mom made me go vote.

16

As with Mason's testimony about Dietrich, the trial court did not have to believe Mason's denial. *See id.*

**Mason's other relevant testimony**

Mason testified that when she was in prison, no one ever told her that as a convicted felon she could not vote and that nothing in her release orientation materials told her that as a convicted felon she could not vote. According to Mason, no one from the United States government had ever told her she would be ineligible to vote. Her federal probation officer, to whom she reported for supervised release, confirmed that he had not told Mason she was ineligible to vote and, to his knowledge, no one in that department had told her she was ineligible to vote; it was simply something that the officers did not do.

Mason testified that she remembered filling out the provisional ballot. But she emphatically denied having read the form's left-side text. According to Mason, she never looked at the left side of the form; she simply filled out what "the lady" told her to fill out. Mason said the person who told her she could vote a provisional ballot— someone other than Dietrich—also told her that her provisional ballot would count if she was in the right place to vote but that if she was not at the correct polling place, the vote would not count.

Mason testified that when confronted with the fact that she was not shown as a registered voter in the polling-place or online list of registered voters, it never crossed her mind that she was ineligible to vote. Instead, she was thinking that she (a) still had

17

a voter registration card that she hadn't brought with her, (b) was living at the same residence where she had been living when she voted in 2008, and (c) had her ID with her; thus, she did not understand why she would not be on the list of registered voters. When asked whether she would have jeopardized her freedom to vote had she known she was ineligible to do so, Mason answered no.

Mason appeared to agree with the prosecutor that if she had read the left-side affidavit language when filling out the provisional-ballot form, she would have known that she was ineligible to vote:

> Q. . . . . It's safe to say that anyone reading this language would know, If I'm a felon or if I'm a felon who has not concluded my sentence being on supervised release --
>
> A. Correct.
>
> Q. -- it's clear I'm not eligible to vote? That's clear --
>
> A. Correct.

She also agreed—when asked, "To anyone who would have read it, it'd be clear this [voting in an election knowing one is not eligible to do so] is a felony?"—that "[i]f it was read, yes, it would have been very clear."

Toward the end of trial, the trial judge questioned Mason directly and asked her, "You're explaining to me, despite all the documents and the things that you've done in federal court and knowing that this is a legal document, you wouldn't read that?" Mason replied, "I didn't really know it was a legal document. All I know is it was a . . . provisional form." The trial judge also queried, "[Y]ou're telling me you

18

didn't read this, and because you didn't read it, you didn't realize that you no longer had the right to vote?" Mason replied, "I had no idea. . . . I just listened to exactly what they were telling me, and I just did it." In looking at the exhibit of the provisional ballot she had signed, Mason said, "I didn't pay attention to any of this"; she stated that the only thing she had verified was whether everything on the form matched her ID. Mason informed the judge that when she was arrested for illegal voting, she told the officer that she had not illegally voted because she "used [her] ID."

**Mason's 2004 provisional vote**

Tarrant County election records admitted into evidence show that Mason also cast a provisional ballot in the 2004 election. That provisional ballot served to register her to vote in the future. She voted thereafter in the 2008 election. Although the only part of the 2004 provisional ballot form admitted into evidence was the side of the form that Mason filled out herself and signed, the Tarrant County assistant voter registration manager testified that Mason would have had to have seen the same written affidavit admonishments contained in the 2016 provisional ballot form; in other words, the two ballot forms were the same.

## Analysis

The State contends that it presented sufficient evidence that Mason knew that she was ineligible to vote because

- circumstantial evidence from Dietrich and the poll worker is sufficient to raise a reasonable inference that Mason read the left-side affidavit language of the provisional-ballot form when she voted in 2016,

- the language in the 2004 and 2016 provisional ballots was sufficient to warn her that she was ineligible to vote in 2016 because of her intervening felony conviction, and

- Mason admitted that if she had read the 2016 provisional ballot's left-side affidavit language, she would have known that she was not eligible to vote in that election.

In her dissent in *Mason II*, Judge Slaughter pointed out other parts of the record that she considered relevant to our sufficiency analysis:

- While Mason was incarcerated, the TCEA sent her a notice—to the same address where she returned to live after her incarceration and where she was living when she voted in 2016—that her voter registration had been cancelled because of her felony conviction, and that notice was never returned to the TCEA.

- In addition to the fact that much of her testimony directly conflicted with Dietrich's and the poll worker's, Mason had a prior felony conspiracy to defraud conviction, from which the trial judge also could have reasonably inferred that she was not credible.

- The trial judge could have reasonably inferred that by telling the poll worker that she had lived at the same address since 2008—without revealing that she had not lived there during the years she was incarcerated—Mason was trying to conceal the fact that she was a convicted felon.

663 S.W.3d at 644–45 (Slaughter, J., dissenting).

**That Mason appeared to have read the left-side affidavit language; agreed at trial that if she had read it, she would have known that she was ineligible to vote; was not credible; and possibly tried to conceal her status as a felon by not revealing that she had not continuously lived at the address where she was living when she voted is not sufficient proof to show that she actually realized her status as a felon on federally supervised release made her ineligible to vote in the 2016 election.**

As we pointed out in discussing the evidence at trial, the trial judge as factfinder was entitled to disbelieve all of Mason's testimony, in particular her testimony that she did not read the left-side affidavit language and that she did not know she was ineligible to vote. But finding Mason to be not credible—and disbelieving her protestation of actual knowledge—does not suffice as proof of guilt. As the Texas Court of Criminal Appeals has made clear,

> The fact that the trial judge was entitled to disregard the appellant's testimony does not mean that the missing elements of the offense are supplied by rejecting this testimony. The burden of proof is on the State, and it is incumbent on the State to prove every element of the offense. The evidence in this case is not rendered sufficient by the trial judge's apparent disbelief of appellant's testimony.

*Wright v. State*, 603 S.W.2d 838, 840 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g) (citation omitted).

In civil cases, we presume that a party who signs a document knows its contents. *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding). But the same does not necessarily hold true in criminal cases. For example, we do not presume that a defendant understood the meaning of a legally defined term simply because the trial court read that term to him. *Burke v. State*, 80 S.W.3d 82, 95 (Tex.

21

App.—Fort Worth 2002, no pet.) (op. on reh'g) (holding that we do not presume that a trial judge's use of the term "reckless aggravated assault" informed the defendant that his knowledge of and conscious disregard of the risk were essential elements of the offense to which he had pleaded). And although "[k]nowledge may be proven with circumstantial evidence and inferred from the acts, words, and conduct of the accused," *Hammack*, 622 S.W.3d at 915—in other words, based on reasonable inferences from the evidence rather than speculation—circumstantial evidence of mens rea is subject to the same sufficiency standard as other evidence, *see, e.g.*, *Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). Thus, that Mason may have read an affidavit that

- asked her to affirm that she was not a convicted felon, or that if she was a convicted felon to affirm that she had completed her punishment, but that also

- did not expressly warn her that being a felon who has not completed her punishment renders her ineligible to cast a provisional ballot at that time— much less use a provisional ballot for the purpose of registering to vote in the future even if her provisional vote did not count—and that also

- did not warn her that, based on the nature of her conviction, she might be ineligible to vote indefinitely even if she had completed her punishment[8]

is not enough,[9] standing alone, to show that Mason "actually realized" from reading the left-side affidavit language that she was voting illegally by casting the provisional

---

[8]As we pointed out in *Mason I*, "it appears that the Texas constitution does not allow the *legislature* to re-enfranchise a person convicted of 'bribery, perjury, forgery, or other high crimes,'" regardless of the general re-enfranchisement for persons convicted of any felony in Election Code Section 11.002(a)(4)(A). 598 S.W.3d at 767 n.9.

[9]In *Mason I*, we noted—in the context of determining whether Mason could have adequately raised a mistake-of-law defense—that "at the very least [the affidavit

22

ballot in the 2016 election.[10] We must look at the remaining evidence to determine if the trial judge could have reasonably inferred from that evidence and the fact that Mason read the affidavit language that she actually realized that she was ineligible to cast the provisional ballot. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) ("In reviewing the sufficiency of the evidence, we should look at 'events occurring before, during[,] and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985))).

It is important that Mason had provisionally voted once before, not because it makes it more likely—in the context of all of the evidence—that she knew what the

---

warnings] should have served their purpose of warning Mason that as a convicted felon, she could still have a legal impediment to voting." *Id.* at 780 n.27. But whether she might have realized from the warnings that she could have some kind of impediment to voting is not the same as actually realizing she was ineligible to vote by law. As the Court of Criminal Appeals noted in *Mason II*, "[t]o construe [Election Code Section 64.012(a)(1)] to mean that a person can be guilty even if she does *not* 'know[ ] the person is not eligible to vote' is to disregard the words the Legislature intended [and] turns the knowledge requirement into a sort of negligence scheme wherein a person can be guilty because she fails to take reasonable care to ensure that she is eligible to vote." 663 S.W.3d at 629.

[10]We recognize that the affidavit's purpose is to actually inform the person casting the provisional ballot of the conditions necessary to legally vote and the consequences of voting when not eligible, as well as to serve as at least some evidence of that person's knowledge of those conditions. *See Common Cause Ga. v. Kemp*, 347 F. Supp. 3d 1270, 1292 (N.D. Ga. 2018) ("The purpose of HAVA's provisional voting section is to ensure that voters are allowed to vote (and to have their votes counted) *when they appear at the proper polling place and are otherwise eligible to vote*." (emphasis added)). Nevertheless, the adequacy of the affidavit language to fulfill that purpose is relevant to the issues in this case.

23

requirements for voting legally were when she voted in 2016, but because when she signed the provisional ballot form in 2004—even though she was not a registered voter at that time—that form served as her voter registration for the future. *See* Tex. Elec. Code Ann. § 65.056(a) ("If the affidavit on the envelope of a rejected provisional ballot contains the information necessary to enable the person to register to vote under Chapter 13, the voter registrar shall . . . treat the copy as an application for registration under Chapter 13."). And she was not prosecuted for casting that provisional ballot—"voting"—even though she was not registered at that time (and therefore ineligible to vote).[11] Her vote simply wasn't counted. Thus, the reasonable inference from this evidence is not that reading the left-side affidavit language while completing and casting her 2004 provisional ballot would have adequately warned Mason in 2016 that she was ineligible to vote; rather, this evidence weighs in favor of a conclusion that Mason did not realize in 2016 that she would be voting illegally by casting the provisional ballot.[12]

Mason testified that it would be clear to anyone reading the affidavit language that a felon on supervised release was ineligible to vote and that the affidavit clearly

---

[11]As one of the amici has pointed out: "If the mere reading of a provisional ballot affidavit . . . can show actual knowledge of voter ineligibility, anyone who reads and signs the affidavit—but is not in fact registered to vote (notwithstanding any good faith mistake in registration status)—is guilty of violating the criminal statute."

[12]No evidence shows that Mason attempted to re-register to vote after being released from federal prison, i.e., evidence that would show she knew her voter registration had been cancelled.

warned that voting while ineligible to do so is a felony. But she also appeared to indicate that she did not understand the affidavit's importance at the time she voted:

> Q. . . . And you understand the importance of these admonishments. This essentially lays out the requirements for eligibility to vote in an election here in the state of Texas. Do you understand?
>
> A. I understand it *now*, yes, sir.

[Emphasis added.] Thus, even when considered with the rest of the evidence, Mason's apparent agreement with the prosecutor is not enough to show that she actually knew that her circumstances when voting in 2016 made her ineligible to vote.

And that, when talking to the poll worker, Mason might have purposefully omitted the information that she had not lived at her address for the time of her incarceration—and therefore might have been trying to conceal the fact that she had been incarcerated—is likewise not sufficient to prove she knew that her status made her ineligible to vote by casting a provisional ballot. Dietrich testified that Mason told him she did not know why her name was not on the list of registered voters at the polling place. Dietrich even tried to look up her name in the online database (after which Mason did not leave but persisted in her effort to vote). And Dietrich himself did not know that Mason was actually ineligible to vote; that fact was brought to his attention some time after she had cast her provisional ballot and left the polling place. Finally, Mason did not try to hide her identity from him, even producing her ID for inspection.

We conclude that the quantum of the evidence presented in this case is insufficient to support the conclusion that Mason actually realized that she voted

25

knowing that she was ineligible to do so and, therefore, insufficient to support her conviction for illegal voting under Election Code Section 64.012(a)(1). In the end, the State's primary evidence was that Mason read the words on the affidavit. But even if she had read them, they are not sufficient—even in the context of the rest of the evidence in this case—to prove beyond a reasonable doubt that she actually knew that being on supervised release after having served her entire federal sentence of incarceration made her ineligible to vote by casting a provisional ballot when she did so. *See* Tex. Elec. Code Ann. § 64.012(c).

We therefore sustain Mason's first issue.

## Conclusion

Because we have determined that the evidence is insufficient to support Mason's guilt, we reverse the trial court's judgment and render a judgment of acquittal. *See* Tex. R. App. P. 43.2(c), 51.2(d); *Greene v. Massey*, 437 U.S. 19, 24–25, 98 S. Ct. 2151, 2154–55 (1978); *Burks v. United States*, 437 U.S. 1, 16–18, 98 S. Ct. 2141, 2150–51 (1978); *Winfrey v. State*, 393 S.W.3d 763, 774 (Tex. Crim. App. 2013).

/s/ Wade Birdwell

Wade Birdwell
Justice

Publish

Delivered: March 28, 2024

26

# Attachment A (Blank Provisional Ballot Form)

AW7-15-53, 9/13
*Prescribed by Secretary of State*
*Sec. 63.011, Election Code*

| Type of Election *(Tipo de Elección)* | Date of Election *(Fecha de la Elección)* |
|---|---|
| Authority Conducting Election *(Autoridad Administrando la Elección)* | Precinct No. where voted *(Núm de Precinto-donde voto)* |
| Precinct No. where registered *(Núm de Precinto-donde esta registrado)* | Ballot Code from the Voter Provisional Stub *(Codigo de la boleta del Talón del Voto Provisional)* |

**TO BE COMPLETED BY VOTER:** *(PARA QUE EL VOTANTE LO LLENE:)*
I am a registered voter of this political subdivision and in the precinct in which I'm attempting to vote and have not already voted in this election (either in person or by mail). I am a resident of this political subdivision, have not been finally convicted of a felony or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned. I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote. I understand that giving false information under oath is a misdemeanor, and I understand that it is a felony of the 2nd degree to vote in an election for which I know I am not eligible.

*Estoy inscrito como votante en esta subdivision politica y en el precinto en el cual estoy intentando votar y aun no he votado en esta elección (en persona o por correo). Soy residente de esta subdivision politica, no he sido definitivamente condenado de algun delito mayor o si soy un delincuente he cumplido toda me condena inclusive el periodo de encarcelamiento, libertad condicional, libertad supervisada o he sido indultado. No me han determinado por un juicio final de un tribunal ejerciendo jurisdicción de un testamento ser totalmente incapacitado mentalmente o parcialmente incapacitado sin el derecho de votar. Entiendo que dar información falsa bajo juramento es un delito menor y también entiendo que es un delito mayor de segundo grado votar en una elección sabiendo que no cumplo con los requisitos necesarios.*

STATE'S
EXHIBIT
8

## Notice
## To Be Removed by Voter Registrar Only

## Affidavit of Provisional Voter *(Declaración Jurada de Votante Provisional)*

| Last Name *(Apellido)* | First Name *(Primer nombre)* | Middle Name *(if any) (Segundo nombre) (si tiene)* | Former Name *(Nombre anterior)* |
|---|---|---|---|

Residence Address: Street Address and Apartment Number, City, State, and Zip. If none, describe where you live (Do not include PO Box, Rural Rt. Or Business Address) *(Domicilio: calle y numero de apartamento, Ciudad, Estado, y Código Postal: A falta de estos datos, describa donde vive) (No incluya el apartado de correos, ruta rural, o dirección comercial.)*

Mailing Address: City, State, and Zip. If mail cannot be delivered to your residence address. *(Dirección postal, Ciudad, Estado y Código Postal) (si es imposible entregarle correspondencia a domicilio)*

Date of Birth: Month/Day/Year *(Fecha de nacimiento): (Mes/Dia/Año)* _/_/_ | Gender: (Optional) *(sexo) Opcional* ☐ Male *(Masculino)* ☐ Female *(Femenino)*

TX Driver's License No. or Personal I.D. No. (issued by TX Dept of Public Safety) *(Numero de su licencia de conducir o de su Cédula de Identidad expedida por el Departamento de Seguridad Publica de Texas)* | Social Security No. (last 4 digits required if you do not have a driver's license or I.D. number) *Numero de Seguro social (si no tiene licencia de conducir o identificación personal se requiere los 4 últimos digitos de su numero de seguro social)* XXX-XX-

☐ I have not been issued a TX driver's license/personal identification number or Social Security Number.
*Yo no tengo una licencia de conducir, Cédula de identidad personal de Texas ni un número de Seguro Social.*

Check appropriate box: ARE YOU A UNITED STATES CITIZEN? *(Marque el cuadro apropiado: Es usted ciudadano/a de los Estados Unidos)* YES *(si)* ☐  NO *(no)* ☐ | Signature of Voter: *(Firma del votante)* X _____

**STUB TO BE DETACHED BY VOTER REGISTRAR**

27